UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BEATRICE VEGA MACIEL, an individual,<br><br>  Plaintiff,<br><br>  v.<br><br>D&B SUPPLY, LLC, an Idaho limited liability company,<br><br>  Defendant. | Case No. 1:24-cv-00445-DKG<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

This case arises out of Plaintiff Beatrice "Betty" Vega Maciel's termination from Defendant D&B Supply, LLC (D&B). Maciel claims her termination was in retaliation for her complaining about and requesting an internal investigation into gender-based pay discrepancies between employees, in violation of the Idaho Human Rights Act (IHRA), Idaho Code § 67-5901, Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et. seq.*, and the Equal Pay Act, 29 U.S.C. § 206 *et. seq.* (Dkt. 5).

Presently before the Court is D&B's Motion for Summary Judgment. (Dkt. 18). The motion is fully briefed and ripe for the Court's consideration.[1] A hearing on the motion was conducted on February 26, 2026. (Dkt. 23). Having carefully considered the record, the parties' briefing and supporting materials, and oral argument, the Court finds as follows.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Maciel worked part-time for D&B at its Jerome, Idaho, location from March 20, 2020, until her termination on June 7, 2023. (Dkt. 18-1 at ¶¶ 1, 3; Dkt. 19-1 at ¶¶ 1, 7).

On June 2, 2023, after learning that a recently hired, younger male employee earned a higher hourly wage because of his ability to speak Spanish, Maciel called D&B's Chief Human Resources Officer, Clark Baumgartner, to raise her concerns that she was not also earning a higher wage based on her ability to speak Spanish. (Dkt. 18-1 at ¶ 5; Dkt. 19-1 at ¶¶ 2–4). During this call, Maciel noted that in addition to herself, she knew of another female Spanish-speaking employee who did not receive a higher hourly wage, and Maciel requested an investigation regarding whether the pay discrepancy related to age or gender. (*Id.*; Dkt. 19-5, Recording 1 at 0:00:30–0:01:30). Baumgartner explained that D&B did not have a formal policy to increase wages based on language fluency, that wages are discretionary, and encouraged her to speak with her manager,

---

[1] The parties have consented to proceed before a United States Magistrate Judge in this matter pursuant to 28 U.S.C. § 636(c)(1) and Local Civil Rule 72.1(a)(1). (Dkt. 14).

[2] Consistent with the standard on summary judgment, the factual background is written to reflect that all evidence in the record is construed in a light most favorable to the non-moving party, who is also given the benefit of all reasonable inferences which can be drawn from that evidence.

MEMORANDUM DECISION ORDER - 2

Randy "Ready" Starr if she was dissatisfied about her wages. (Dkt. 18-1 at ¶ 5). Maciel

explained to Baumgartner that she understood the newly hired employees were informed

about a policy of getting paid an extra dollar for speaking Spanish, and again asked for an

investigation into why she was not receiving the same. (Dkt. 19-5, Recording 1 at

0:06:00–0:06:42, 0:07:50–0:08:30). Throughout the phone call, Maciel repeatedly asked

for an investigation into the alleged discriminatory policy she had heard about. (*Id.* at

0:20:39–0:21:41, at 0:28:49–0:29:14, at 0:33:29–0:34:04, and at 0:34:34–0:34:56 ("I do

want an investigation to be opened up and done is [sic] why does it seem that the two

women are not getting that dollar raise, because I do feel a little discriminated on that. Is

it gender? Is it age?")).

Baumgartner asked whether Maciel had discussed her concerns with Starr, and

questioned why she remained at D&B if she felt undervalued. (*Id.* at 0:24:48–0:25:20).

Maciel responded that she did not feel undervalued until she found out about the pay

discrepancy that she was questioning him about. *Id.* Baumgartner agreed to investigate

the issue and discuss it with Starr and cautioned Maciel not to discuss her wages with

anyone other than Starr. (*Id.* at 0:31:55–0:36:46).

Shortly thereafter, Maciel called Starr as directed, Starr added Baumgartner to the

phone call, and the three further discussed Maciel's concerns regarding her wage. (Dkt.

18-1 at ¶ 6; Dkt. 19-1 at ¶ 5; Dkt. 19-5, Recording 2 at 0:00:05–0:03:20). During this call,

Maciel explained her concerns about the discriminatory payment policy she had heard

about and requested a review of her wages. (Dkt. 19-5, Recording 2 at 0:03:10–0:07:00).

Starr stated there was no policy for increasing wages based on an employee's ability to

speak Spanish, but that it is an "asset" he takes into consideration when hiring new employees. (*Id.* at 0:05:48–0:06:50). Starr agreed to discuss with Maciel her wages and the potential for a merit-based increase. (*Id.* at 0:13:37–0:15:58). Starr and Baumgartner both cautioned Maciel against discussing wages with co-workers who do not control her wages. (*Id.* at 0:11:02–0:15:59).

The parties dispute whether Maciel returned to the Jerome store and discussed her wages with her co-workers after the June 2, 2023, phone calls. Maciel asserts she did not return to work after June 2, 2023, and that any conversations she had with her co-workers occurred before she called Baumgartner on June 2, 2023. (Dkt. 19-2 at ¶¶ 5–7).

The next day, on June 3, 2023, Maciel and Starr spoke on the phone again. Starr directed Maciel not to return to work, explaining that several employees had complained that Maciel harassed and pressured them at work to discuss their wages. (Dkt. 18-1 at ¶ 7; Dkt. 19-1 at ¶ 6). Starr told Maciel not to return to work until he had looked into the situation more and felt comfortable with her returning. (Dkt. 19-5, Recording 3 at 0:00:06–0:02:08). Thereafter, Starr explained that HR would reach out to Maciel, but that she was removed from the schedule in the meantime. (*Id.* at 0:05:28–0:06:50).

On June 7, 2023, Baumgartner notified Maciel over the phone that D&B was terminating her employment. (Dkt. 18-1 at ¶ 8; Dkt. 19-1 at ¶¶ 7–9). At Maciel's request, Baumgartner issued a written notice of her termination. (Dkt. 18-4; Dkt. 19-7). In both the phone call and the termination letter, Baumgartner stated Maciel's termination was part of D&B's seasonal reduction in force, due to Maciel's limited availability and

**MEMORANDUM DECISION ORDER - 4**

tardiness, open dissatisfaction with her wage, overall fit, and D&B's business needs. (Dkt. 18-1 at ¶¶ 8–9; Dkt. 19-1 at ¶¶ 7–9; Dkt. 19-7).

During the June 7, 2023, termination phone call, Baumgartner explained that, usually right after Father's Day, business declines and D&B encourages its store managers to reduce their labor force. (Dkt. 19-5, Termination Recording 0:00:55–0:01:37). Baumgartner explained that, after looking into everything, and because "you're not happy with what you're getting paid, [sic] it seems like the relationship is really frustrated," thus, D&B would apply its seasonal reduction in force early to terminate Maciel, effective immediately. (*Id.* at 0:01:38–0:02:15). Baumgartner noted that there would not be major layoffs, but that he and Starr had determined that Maciel's tardiness, limited availability, and low overall hours were issues that contributed to the employment relationship souring and the ultimate decision to terminate her employment. (*Id.* at 0:02:35–0:06:00; *Id.* at 0:09:57–0:10:44). During the call, Maciel disputed the stated reasons for her termination, indicating that she had never been informed that her timeliness and availability were problems. (*Id.*; *Id.* at 0:08:10–0:09:56). Baumgartner also highlighted that, after being cautioned not to discuss wages with her co-workers, Maciel did so, causing other employees feel "quite uncomfortable." (*Id.* at 0:06:05–0:08:05). At no point in the call did Baumgartner indicate whether D&B had conducted an investigation into Maciel's complaints.

On or about August 14, 2023, Maciel filed a Charge of Discrimination with the Idaho Human Rights Commission (IHRC) and the Equal Employment Opportunity Commission (EEOC), alleging unlawful retaliation based on sex. (Dkt. 19-4 at ¶ 11; Dkt.

19-8). On April 25, 2024, the IHRC issued its determination, finding probable cause to

believe that illegal retaliation occurred, and issued a right to sue letter on August 14,

2024. (Dkt. 1 at ¶ 16). On September 24, 2024, Maciel filed a Complaint in this Court

against D&B alleging one count of retaliation in violation of Title VII of the Civil Rights

Act, the IHRA, and the Equal Pay Act.[3] (Dkt. 1). On October 29, the EEOC found

reasonable cause to believe violations occurred and issued Maciel a right to sue letter.

(Dkt. 5 at ¶ 17). On October 30, 2024, Maciel filed an Amended Complaint,[4] adding a

second claim alleging retaliation pursuant to the EEOC's right to sue letter.[5] (Dkt. 5).

Maciel alleges her employment was terminated in retaliation for her complaints about a

gender-based pay discrepancy and her request for an internal investigation into the

matter. (Dkt. 1 at 2-3). D&B moves for summary judgment on the claim. (Dkt. 18).

---

[3] While a plaintiff must typically obtain a right to sue letter from the EEOC before bringing a
Title VII claim in federal court, a plaintiff may rely on a right to sue letter from a state counterpart like the
IHRC. *Stiefel v. Bechtel Corp.*, 624 F.3d 1240, 1244-45 (9th Cir. 2010).

[4] The Court notes the Amended Complaint is untimely. A plaintiff may amend its pleading once
as a matter of course within 21 days of the date of service of the pleading. Fed. R. Civ. P. 15(a)(1)(A).
Other amendments must have the other party's written consent or leave of the court. Fed. R. Civ. P.
15(a)(2). The federal rules dictate that leave should be freely given when justice so requires. *Id.* Although
Plaintiff did not expressly request the leave of the Court in filing the Amended Complaint after the
expiration of the 21-day deadline, the Court will grant Plaintiff leave to do so because it was filed one day
after Plaintiff received the EEOC's right to sue letter and the only amendments sought are related to
adding a claim for relief based on that decision, and because Defendant indicated its non-objection to the
untimely submission at oral argument. (Dkt. 5 at ¶ 17; Dkt. 23). Accordingly, the Court deems the
Amended Complaint filed at Docket 5.

[5] Despite the language in the Amended Complaint, Plaintiff confirmed at oral argument that this
case involves a single claim for retaliation in violation of Title VII of the Civil Rights Act, brought
pursuant to the IHRC and the EEOC. (Dkt. 23). As discussed herein, a claim for retaliation under the
EEOC is subject to the same standards on summary judgment as is a claim for retaliation brought under
the IHRC, because both are enforcement mechanisms for the substantive rights established by Title VII of
the Civil Rights Act complained of here. *See* 42 U.S.C. § 2000e-5; Idaho Code § 67-5901.

## STANDARD OF LAW

Summary judgment is appropriate where a party demonstrates that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is a fact "that may affect the outcome of the case." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact and a favorable judgment is due as a matter of law. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In evaluating whether the moving party has met this burden, the Court views the evidence in the light most favorable to the non-moving party and the Court must not make credibility findings. *Anderson*, 477 U.S. at 255. If the moving party satisfies its initial burden, the non-moving party must identify facts sufficient to show a genuine issue for trial to defeat the motion for summary judgment. *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000). The non-moving party must go beyond the pleadings and show "by…affidavits, or by the depositions, answers to interrogatories, or admissions on file," that a genuine dispute of material fact exists. *Celotex*, 477 U.S. at 324. The Court must grant summary judgment if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

**DISCUSSION**

On this motion, D&B seeks summary judgment on Maciel's retaliation claim.

Retaliation claims are subject to the *McDonnell-Douglas* burden-shifting analysis used at

summary judgment to determine whether there are triable issues of fact for resolution by

a jury. *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464–65 (9th Cir. 1994); *see*

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonnell Douglas*, a

plaintiff must first establish a prima facie case of retaliation or other illegal conduct. The

burden then shifts to the employer to articulate a legitimate, non-retaliatory reason for its

adverse employment action. *Steiner*, 25 F.3d at 1464–65. If the employer meets this

burden, the plaintiff must show a genuine issue of material fact that the defendant's

reason for the adverse action was pretext for retaliation. *Id.*; *Brooks v. City of San Mateo*,

229 F.3d 917, 928 (9th Cir. 2000). Analysis of claims under the IHRA are the same. *See*

*Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004); *Hatheway v. Bd. of*

*Regents of Univ. of Idaho*, 310 P.3d 315, 329 (Idaho 2013).

1.      **Prima Facie Case**

To establish a prima facie case of retaliation in violation of Title VII, a plaintiff

must show "(1) involvement in a protected activity, (2) an adverse employment action,

and (3) a causal link between the two." *Brooks*, 229 F.3d at 928.

The second element is not at issue here, as it is undisputed that Maciel suffered an

adverse employment action when she was terminated on June 7, 2023.[6] Therefore, to

---

[6] Defendant conceded this element is not at issue at oral argument. (Dkt. 23).

overcome summary judgment, Maciel must establish the first and third elements of the

prima facie case.

### a.    Protected Activity

In moving for summary judgment, D&B argues that Maciel's actions were not

protected. (Dkt. 18-2 at 6; Dkt. 20 at 2). Maciel contends she engaged in a protected

activity when she complained about and requested an investigation into whether there

were pay discrepancies due to her gender or her age. ((Dkt. 5 at ¶ 12; Dkt. 19 at 2).

Protected activities fall into two distinct categories: participation and opposition.

*See* 42 U.S.C.A. § 2000e–3(a). While participation includes making a charge; testifying;

assisting; or participating in any manner in an investigation, proceeding, or hearing under

Title VII, *see id.*, opposition includes "reasonable attempts to contest an employer's

discriminatory practices." *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756,

763 (9th Cir. 1996). An employee's formal or informal complaint regarding unlawful

employment practices is a "protected activity," and a plaintiff need only show that her

belief that an unlawful employment practice occurred was "reasonable." *Passantino v.*

*Johnson & Johnson Consumer Prods., Inc.,* 212 F.3d 493, 506 (9th Cir. 2000); *Moyo v.*

*Gomez*, 40 F.3d 982, 984 (9th Cir. 1994) ("It is not necessary, however, that the

employment practice actually be unlawful; opposition clause protection will be accorded

'whenever the opposition is based on a "*reasonable belief*" that the employer has

engaged in an unlawful employment practice.'") (quoting *Equal Employment*

*Opportunity Commission v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1012 (9th Cir.

1983)). This objective standard must make "due allowance . . . for the limited knowledge

possessed by most Title VII plaintiffs about the factual and legal bases of their claims."
*Moyo*, 40 F.3d at 985.

Here, it is undisputed that on June 2, 2023, Maciel contacted Baumgartner and Starr and informally complained about the alleged discriminatory pay policy she heard about. (Dkt. 18-1 at ¶¶ 5–6; Dkt. 19-1 at ¶ 4–5). D&B argues Maciel's belief that she was being discriminated against was effectively unreasonable, because Maciel cannot point to any evidence to establish D&B had a discriminatory policy to pay bilingual men more than bilingual women. (Dkt. 18-2 at 4). In support, D&B cites Maciel's deposition testimony, where she agreed that she was never informed about the policy by anyone in a position of authority with D&B. (Dkt. 18-2 at 4–6; Dkt. 18-9 at 5–7).

As noted, however, the actual existence of an unlawful policy is not required. *Moyo*, 40 F.3d at 984. A plaintiff's erroneous belief that an employer engaged in an unlawful employment practice is reasonable, and thus protected, when it is premised on a good faith mistake of fact or law at the time of the opposition. *Id.* at 984–85. Here, Maciel contends in her Amended Complaint and in her declaration that before the June 2, 2023 phone calls to Baumgartner and Starr, she learned from at least three of her co-workers that D&B had a policy to increase pay for Spanish-speaking employees, but only a younger male co-worker was receiving the pay raise. (Dkt. 19 at 3). In support, Maciel points to the recording of the first phone call on June 2, 2023, where she informed Baumgartner about what she heard regarding the discriminatory policy and indicated that "all the new hires know this, because I asked at least three people that are new hires and they said the same thing." (Dkt. 19-5, Recording 1 at 0:07:50–0:08:30). Further, Maciel

has adduced evidence that during the second June 2, 2023, call, she further explained her concerns to Starr, identifying the younger male employee as "Ian." (Dkt. 19-5, Recording 2 at 0:03:10–0:07:00).

The Court finds Maciel has provided sufficient evidence upon which a reasonable juror could conclude that Maciel reasonably believed that the conduct she reported to Baumgartner and Starr was unlawful and, therefore, her opposition constituted a protected activity. *See Gaub v. Prof. Hosp. Supply, Inc.*, 845 F. Supp. 2d 1118, 1134 (D. Idaho 2012) ("[A]n employee's formal or informal complaint regarding unlawful employment practices is a 'protected activity,' and a plaintiff need only show that her belief that an unlawful employment practice occurred was 'reasonable.'"); *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1113 n.5 (9th Cir. 2004) ("[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." (quoting *Anderson*, 477 U.S. at 255)).

### b. Causal Connection

As to the third prong, the ultimate burden is on the plaintiff making a retaliation claim to "establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *University of Texas Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013) (rejecting the motivating factor test in a retaliation claim); *see also Sorenson v. City of Caldwell*, 692 Fed. Appx. 832, 834 (9th Cir. 2017) (recognizing the third element of the prima facie case for a Title VII retaliation claim requires a

plaintiff to allege facts showing that the protected activity was a but-for cause of the alleged adverse action).[7]

At the prima facie stage, once it has been shown that plaintiff engaged in a protected activity and suffered an adverse employment action, "[t]he causal link may be established by an inference derived from circumstantial evidence, 'such as the employer's knowledge that the employee engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision.'" *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988) (quoting *Yartzoff v. Thomas,* 809 F.2d 1371, 1376 (9th Cir. 1987)) ("Causation sufficient to establish the third element of the prima facie case may be inferred from ... the proximity in time between the protected action and the allegedly retaliatory employment decision.").

Here, it is undisputed that Maciel made Starr and Baumgartner aware of her opposition to the perceived discriminatory payment policy by speaking to both of them about her concerns on June 2, 2023. (Dkt. 18-1 at ¶¶ 5–6; Dkt. 19-1 at ¶ 4–5). Further, Maciel has presented evidence, and there is no genuine dispute, that one day later, she was suspended, and four days after being suspended, she was terminated on June 7, 2023. (Dkt. 19-1 at ¶¶ 6–7; Dkt. 19-5, Recordings 1–3, Termination Recording). The proximity

---

[7] D&B argues that Maciel's response relied on the wrong evidentiary standard for causation by referencing the motivating-factor standard in *Bostock v. Clayton Cnty.*, 590 U.S. 644 (2020). (Dkt. 20 at 4). While the Court agrees that the *Bostock* standard does not apply to Title VII retaliation claims (s*ee Nassar*, 570 U.S. at 362), Maciel has nonetheless adduced evidence sufficient to establish a genuine issue of material fact as to causation under the correct but-for causation standard. The Court notes that despite Maciel's reliance on the motivating-factor standard, she effectively argued under the but-for standard in her briefing. (Dkt. 19 at 4) ("Had she never made that inquiry, they never would have investigated or fired her."); (Dkt. 19 at 5) ("[A] protected activity of complaining about a male/female pay discrepance was the only reason for [her] termination.").

in time between Maciel engaging in the protected activity and being terminated just five days later, paired with her employer's knowledge of such, is evidence upon which a jury could infer a causal link sufficient to satisfy the third element of the prima facie case of retaliation. *Yartzoff*, 809 F.2d at 1376. Accordingly, the burden shifts to D&B to articulate a legitimate, non-retaliatory reason for terminating Maciel's employment. *Steiner*, 25 F.3d at 1464–65.

### 2.    D&B's Legitimate, Non-Retaliatory Reasons for Termination

To adduce a non-retaliatory explanation for terminating Maciel's employment, D&B argues it had legitimate business reasons; namely, that the termination was part of its "routine seasonal reduction in force"; because of Maciel's limited availability and tardiness; and because Maciel harassed other employees about wages on June 3, 2023. (Dkt. 18-2 at 2, 8–9). In support, D&B points to declarations of Baumgartner and Starr, the language in the termination letter, and two letters dated June 3, 2023, purportedly from employees complaining to Starr about Maciel asking them about their wages. (Dkt. 18-3 to 18-7). The Court finds these assertions satisfy D&B's burden on summary judgment to produce a legitimate, non-retaliatory reason for terminating Maciel's employment. Accordingly, to survive summary judgment, the burden shifts to Maciel to show a genuine issue of material fact that D&B's reasons terminating her are pretext for retaliation. *Steiner*, 25 F.3d at 1464–65.

### 3.    Pretext

Maciel can establish that D&B's proffered reasons for firing her are pretextual either: 1) directly, by persuading the Court that the retaliatory reason for her termination

MEMORANDUM DECISION ORDER - 13

more likely motivated D&B, or 2) indirectly, by showing that D&B's proffered

explanations considered by themselves are unworthy of credence. *Hernandez v.*

*Spacelabs Med. Inc.*, 343 F.3d 1107, 1115 (9th Cir. 2003) (quoting *Texas Dep't of Cmty.*

*Affairs v. Burdine*, 450 U.S. 248, 257 (1981)). To establish a genuine issue of pretext

under either avenue, "very little" direct evidence of retaliatory motive is required, but if

circumstantial evidence is relied upon to show pretext, it must be "specific" and

"substantial." *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 969 (9th Cir. 2002);

*see also Black v. Grant Cnty. Pub. Util. Dist.*, 820 F. App'x 547, 552 (9th Cir. 2020) ("As

we have repeatedly stated, a plaintiff's burden to raise a triable issue of pretext is hardly

an onerous one.") (internal citations omitted).

Here, the Court finds there are material issues of fact that preclude summary

judgment. Maciel has offered specific and substantial circumstantial evidence upon

which a reasonable juror could conclude that D&B's proffered reasons for terminating

her employment are pretextual.

First, Maciel has pointed to sufficient evidence to permit the inference that

retaliation more likely motivated D&B to terminate her employment than D&B's stated

reasons. Importantly, Maciel points to the language in the termination letter, citing "your

open dissatisfaction with your wage" as evidence that her termination was predicated

upon her protected activity rather than one of the proffered reasons. (Dkt. 19 at 2; Dkt.

19-7). Next, Maciel points to the short timeframe in which the events took place. As

discussed, "proximity in time between the protected action and the allegedly retaliatory

employment decision is one way a jury logically could infer that the plaintiff was

terminated in retaliation." *Dawson v. Entek Intern.*, 630 F.3d 928, 937 (9th Cir. 2011)

(quoting *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 751–52 (9th Cir.

2001) (cleaned up)). "In some cases, temporal proximity can by itself constitute sufficient

circumstantial evidence of retaliation for purposes of both the prima facie case and the

showing of pretext." *Id.* (citing *Bell v. Clackamas Cnty.*, 341 F.3d 858, 865–66 (9th Cir.

2003); *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731–32 (9th Cir. 1986)). Such is the

case here. D&B learned of Maciel's wage complaints and request for an investigation on

June 2, 2023. Maciel was suspended on June 3, 2023, and terminated on June 7, 2023.

The temporal proximity between Maciel's complaints and her termination, paired with

the plain language in the termination letter, suffice to infer pretext when viewing the facts

in the light most favorably to Maciel, as the Court must do here. Accordingly, Maciel has

pointed to evidence showing that retaliation more likely motivated D&B to terminate her

employment.

 Second, Maciel points to evidence refuting each of D&B's proffered reasons such

that a genuine dispute of fact exists as to the reason for her termination. Maciel argues

that D&B's first proffered reason, her tardiness and limited availability, was never raised

with her prior to her termination and is therefore pretextual. In support, Maciel adduced

her own declaration and previous performance evaluations describing her as a reliable

employee. (Dkt. 19 at 4; Dkt. 19-2 at ¶¶ 8–9) (Dkt. 19-6 at 1, May 2, 2022, Performance

Evaluation) ("Betty shows up to work on time and is willing to come in and help on her

days off if needed."). D&B argues Maciel's reliance on the performance evaluations to

establish her employment record is insufficient to create a genuine issue of fact because

the most recent performance evaluation is dated more than one year before the events at issue. (Dkt. 20 at 3). To show Maciel's history of tardiness and limited availability, D&B points to the termination letter listing Maciel's tardiness and limited availability as reasons for her termination (Dkt. 18-4), and Starr's declaration, (Dkt. 18-5 at ¶ 11) ("Ms. Maciel had a lengthy history of being tardy to work, failing to complete required trainings, changed her own schedule without authorization"). At summary judgment, the Court views conflicting evidence in the light most favorable to the non-moving party and must not make credibility findings. *Anderson*, 477 U.S. at 255. Accordingly, the Court finds Maciel has identified evidence upon which a juror could reasonably conclude that Maciel's tardiness and limited availability are pretextual reasons for her termination.

Maciel has also adduced evidence refuting D&B's proffered reason that she was terminated as part of D&B's routine seasonal reduction in force, by pointing to her employment records and the fact that she was not terminated for three years prior during similar seasonal reductions in force. (Dkt. 19 at 4). Further, Baumgartner stated during the termination call that the annual reduction in force ordinarily occurred after Father's Day, but that D&B would use it early to terminate Maciel. (Dkt. 19-5, Termination Recording 0:01:38–0:02:15). Taken together with the close proximity in time, a reasonable juror could conclude this proffered reason is pretext for retaliation.

Finally, Maciel argues her alleged harassment of co-workers on June 3, 2023, is a pretextual and unsupported reason for her termination. Importantly, Maciel refutes this proffered reason by pointing to the fact that harassing her co-workers is not a stated reason in the termination letter. (Dkt. 19-7). Further, Maciel argues D&B's assertion that

MEMORANDUM DECISION ORDER - 16

she harassed her co-workers on June 3, 2023, is unfounded because she did not return to work after the phone calls on June 2, 2023 or contravene Starr's direction to not talk to co-workers about their wages thereafter. Maciel points to her declaration, (Dkt. 19-2 at ¶ 7), and the June 2, 2023, phone calls, where she indicated to both Baumgartner and Starr that she had already discussed wages with several employees at that point. (Dkt. 19-5, Recording 2 at 0:03:10–0:07:00). D&B disputes this, relying on Starr's declaration (Dkt. 18-5 at ¶ 10) and the two complaint letters from employees (Dkt. 18-6; Dkt. 18-7), to assert that on June 3, 2023, Maciel returned to work and harassed employees about their wages. (Dkt. 18-2 at 9). The Court finds that on this competing evidence, Maciel has established a genuine issue of fact as to whether she discussed wages with co-workers after the June 2, 2023, phone calls and whether D&B's assertion of harassment is a pretextual reason for her termination.

Taken together, the Court finds that Maciel has identified evidence upon which a reasonable juror could infer that she was more likely terminated in retaliation for her protected activity than for the non-retaliatory reasons proffered by D&B, and/or that D&B's proffered explanations considered by themselves are not credible.

For these reasons, the Court finds Maciel has established the existence of a genuine issue of material fact. Accordingly, Defendant's motion for summary judgment is denied.

MEMORANDUM DECISION ORDER - 17

## ORDER

THEREFORE, IT IS HEREBY ORDERED that Defendant's Motion for Summary

Judgment (Dkt. 18) is **DENIED**.

IT IS FURTHER ORDERED that the parties must confer and submit a joint

statement as to how they intend to proceed in this matter on or before April 10, 2026.

DATED: March 13, 2026

Honorable Debora K. Grasham
United States Magistrate Judge

**MEMORANDUM DECISION ORDER - 18**